# DENNIS R. WILSON, a/k/a DENNIS R. WILLSON v. STATE OF MARYLAND

[No. 96, September Term, 1969.]

*Decided December 10, 1969.*

300

The cause was argued before MURPHY, C.J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*William A. Swisher* for appellant.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles E. Moylan, Jr., State's Attorney for Baltimore City,* and *Howard L. Cardin* and *James E. Dudley, Assistant State's Attorneys for Baltimore City,* on the brief, for appellee.

MURPHY, C.J., delivered the opinion of the Court.

The sole question presented by this appeal is whether appellant has been denied his constitutional right to a speedy trial and/or due process of law by reason of what he terms the "unbelievable inefficiency and inexcusable neglect" of the State's Attorney of Baltimore City in not more promptly bringing his case to trial.

The pertinent facts are these: Appellant, a fourteen year old boy, was arrested on November 7 or 8, 1967 for

the murder and robbery on November 2, 1967 of Joseph Pecora. Unable to post bail, appellant was lodged in the Baltimore City jail where, on November 15, 1967, he became fifteen years of age. On November 28, 1967, appellant was jointly indicted with Thomas McCoy, Albert Matthews, and Edward Powers for murder and robbery.

On December 11, 1967, appellant was brought before Judge Meyer Cardin in the Criminal Court of Baltimore for arraignment. Upon ascertaining that appellant was without counsel, the court directed the entry of a not guilty plea on his behalf, and stated it would appoint counsel to represent him. On January 5, 1968, appellant was brought before Judge Anselm Sodaro for arraignment. After determining that no counsel had been appointed to represent appellant, the court stated that it would make such an appointment; and on January 10, 1968, counsel appointed by the court entered his appearance on appellant's behalf. Sometime in either January or February, 1968, Assistant State's Attorney James Dudley was specially assigned to prosecute the appellant and his codefendants, including a fifth youth—Joseph McClain — who was separately indicted as an accessory before the fact to the murder and robbery of Mr. Pecora. A motion for discovery and inspection was filed by appellant's counsel in January of 1968; the State promptly answered.

On June 11, 1968, Powers was separately tried by Judge Sodaro at a one day court trial and found guilty of first degree murder. He was sentenced on June 14, 1968, to life imprisonment.

On September 20, 1968, appellant, acting through his counsel, filed a motion for a speedy trial.

On November 12, 1968, McCoy moved for a severance. Two days later, on November 14, 1968, his trial commenced before a jury, Judge J. Gilbert Prendergast presiding. The jury found him guilty after a three day trial. Sentence was deferred pending the filing of a motion for a new trial.

On December 9, 1968, appellant's case was called for trial before Judge Solomon Liss. The State requested and was granted a postponement because of the unavailability of State's witnesses. Judge Liss directed that the case be rescheduled and tried within one or two weeks.

McCoy was sentenced to life imprisonment on December 10, 1968.

On December 17, 1968, Matthew's trial by jury commenced, Judge Liss presiding. After a four day trial, the jury found him guilty of first degree murder. He was sentenced to life imprisonment on January 7, 1969.

Although not entirely clear from the record, it appears that McClain's trial was held over a four day period in February and March of 1969. The disposition of the trial is not shown by the record.

On April 9, 1969, appellant filed a motion to dismiss the indictments against him, alleging therein that he was then sixteen years of age; that he had been held in jail since November 8, 1967; that previously, on September 20, 1968, he had filed a motion for a speedy trial; that on December 9, 1968, his case was scheduled for trial before Judge Liss, at which time the State requested its seventh postponement; that in postponing the case, Judge Liss told the State's Attorney to reschedule the trial within one week; and that in all the case was scheduled for trial some nine times, both prior to and after the filing of his speedy trial motion, the last time being on March 14, 1969. Appellant claimed in his motion that he had been illegally detained since his arrest and that the State had no witnesses who could testify against him; for these reasons, appellant moved the court to dismiss the indictments.

The motion was heard by Judge Charles D. Harris on April 22, 1969, at which time the appellant testified that he had been incarcerated in the Baltimore City jail since his arrest; that he had, through counsel, filed a motion to dismiss for lack of a speedy trial on September 20, 1968; that he had also personally filed a motion for a

speedy trial on February 17, 1969; that on December 9, 1968, his case was called for trial before Judge Liss but, because the State wasn't prepared to proceed, the case was postponed; and that Judge Liss said "he would bring this case up for trial within two weeks" and that "there would be no more breaks for either side." The appellant offered no further evidence.

The State then proceeded to put on evidence through the testimony of James Dudley, the Assistant State's Attorney specially assigned to prosecute all the indictments growing out of the Pecora murder and robbery. Dudley testified that the first recorded communication he had with appellant's counsel was on March 15, 1968, at which time he indicated by letter that the case was being scheduled for trial on April 9, 1968; that this date was then changed by the State's Attorney to May 22, 1968; that while only two postponements are actually shown on the court's docket — one being December 9, 1968 and the other March 14, 1969—he had been in "constant contact" with appellant's counsel "mostly orally by communications in our office or on the street, or in the hallways;" [1] that he had scheduled the case for trial on at least seven occasions but the "system" of scheduling cases for trial was such that the case "had to be pulled out at the last minute before the day of trial," either because of continuing jury trials in the court in which the case was scheduled or "because of the known time that cases previously scheduled would take." In this connection, Dudley testified that previously scheduled gambling cases took approximately three weeks in the Criminal Court and this required a postponement of appellant's case; that a series of bank robberies also necessitated postponing appellant's case because they took in excess of three weeks trial time, "and they weren't about to interrupt the trials to begin this case." Dudley further testified "there has only been two occasions, one occasion,

---

1. The docket entries do not reflect either of these postponements.

both occasions the State reluctantly requested a postponement," namely, "the date in December being unavailability of a witness, and, two witnesses to be exact; and the date in March was my personal illness." Dudley stated that the "system" of scheduling cases was under the control of the State's Attorney for Baltimore City.

Asked on cross-examination to explain the "system" of scheduling cases for trial, Dudley stated that there were seven or eight criminal courts within the Supreme Bench of Baltimore City hearing criminal cases; that the State's Attorney selects the court within which each case will be tried; that he schedules, in advance, seven or eight cases a day in each court "for the next three weeks;" and that on the scheduled trial date, it sometimes happens that a previously scheduled case is still in the process of being tried, so that witnesses for the scheduled trial must be told not to appear. Dudley testified that in scheduling appellant's case for trial, "no significant interruptions" of the assigned trial date were foreseen; that because appellant's various codefendants had been tried by four different judges assigned to the criminal courts, only three judges remained who could hear appellant's case; that because the trials of appellant's codefendants had taken three days at a minimum to try, it was necessary to begin appellant's case on "a day on which we could begin a jury trial where the entire panel would be available for three days."

Dudley reiterated that of the seven postponements in appellant's case since September 20, 1968, five resulted "because of continuing trials of major significance, the twenty some armed robberies or jury trials that were in progress for two or three days, which only left us to start on a Friday afternoon." Dudley also testified, in effect, that the scheduling of appellant's case was complicated by the fact that he vacillated between a court and jury trial.

In denying appellant's motion to dismiss the indictments, Judge Harris concluded from the evidence that

the postponements on December 9, 1968 and March 14, 1969 were both justified, it not being reasonable to require another assistant prosecutor to try the case when Dudley's illness caused the latter postponement. The court stated that because of the increase in jury trials, and the fact that such trials take approximately three times longer to conclude than a court trial, a large backlog of untried cases had developed—and this despite an increase in the number of judges and prosecutors assigned to the trial of criminal cases. The court referred to Dudley's testimony that appellant vacillated between a court and jury trial, and that only three judges of the criminal court remained available to hear appellant's case (assuming he elected a court trial). The court stated that while there were other judges assigned to the civil, equity, and juvenile courts who could have been asked to hear appellant's case, they too labored under a heavy backload of cases, as great as that in the criminal court. In this connection, Judge Harris noted that there were no security facilities in these courts. The court then concluded that the State acted in good faith and made an honest and genuine effort to try appellant's case; and that consequently appellant had not been denied a speedy trial.

In appealing from the court's order refusing to dismiss the indictments, appellant contends, *inter alia*, that the State "deliberately and maliciously" ignored Judge Liss's order to try him in December; that the State's Attorney's "system" of scheduling cases for trial gives no thought to the right of an accused to a speedy trial; that the "system" "reeks a cruel and inhumane punishment on indigent criminal defendants who must wait in jail and serve a sentence before they have had a fair trial and their innocence or guilt determined by due process of law." Appellant urges that the delay in trial was substantial and was not attributable to the ordinary process of justice.

We have considered the question and developed the

test to be applied in determining whether an accused has been denied his constitutional right to a speedy trial in over forty reported opinions. It would, therefore, serve no useful purpose to restate, other than briefly, the governing principles as they appear applicable to the case before us.

The right to a speedy trial is a relative one and the time within which trial must be had to satisfy the constitutional guaranty depends on the facts and circumstances of the particular case. *Jones v. State,* 241 Md. 599; *Johnson v. State,* 4 Md. App. 648; *Kelly v. State,* 2 Md. App. 730. Four factors are relevant to a consideration of these facts and circumstances in determining whether a delay in trial assumes constitutional proportions: (1) the length of the delay, (2) the reason for the delay, (3) whether prejudice to the accused has resulted, and (4) whether the accused has waived his right to a speedy trial. *Barnett v. State,* 8 Md. App. 35; *Stevenson v. State,* 4 Md. App. 1. Waiver will, of itself, dispose of a contention that an accused has been denied a speedy trial; "but the other three factors are relative and must be considered together in arriving at a decision in each case." *Hall v. State,* 3 Md. App. 680, 686. Where the delay in bringing the case to trial is "substantial" in the constitutional sense, a *prima facie* showing of prejudice is deemed to exist and the State in such case has the burden of proving that there was no more delay than is reasonably attributable to the ordinary process of justice and that the accused suffered no serious prejudice thereby; when the delay is less than "substantial," even if it is purposeful, oppressive, or negligent, at least some showing by the defendant of "a strong possibility of prejudice" is required. *King v. State,* 6 Md. App. 413; *Frazier v. State,* 5 Md. App. 88; *Stevenson v. State, supra.* There is, however, no precise rule by which to determine when a delay is "substantial;" the determination must be made in light of the facts and circumstances of each particular case. *Stevenson v. State, supra.*

As appellant was indicted on November 28, 1967, and

as his final motion to dismiss the indictment was heard and decided on April 22, 1969, the overall delay in the trial of the case amounts to seventeen months. The delay between the filing of appellant's speedy trial motion on September 20, 1968 and the lower court's denial of the motion to dismiss on April 22, 1969 approximates seven months.

In determining the question whether, under the circumstances, a delay is substantial or less than substantial, we recognize the principle espoused by the Supreme Court in *United States v. Ewell,* 383 U. S. 116, 119, that "because of the many procedural safeguards provided an accused, the ordinary procedures for criminal prosecution are designed to move at a deliberate pace." We also recognize that an accused is protected only against unreasonable or unnecessary delay; and that the State is entitled to time to prepare for trial with reasonable diligence and also to any reasonably needed time to conform with the trial court's calendar of criminal cases in the actual trial of the case. See *Jones v. State, supra; Bryant v. State,* 4 Md. App. 572; *Fabian v. State,* 3 Md. App. 270. We have thus taken into account the fact that in the course of the administration of justice, administrative problems sometimes arise of such consequence as to make a delay on the part of the State in bringing a case to trial not one stemming from a failure on its part to proceed with due diligence, *e.g.,* the administrative problems encountered by the State's Attorney of Baltimore City in the wake of *Schowgurow v. State,* 240 Md. 121. See *Hall v. State, supra; Brown v. State,* 2 Md. App. 388. On the other hand, we have given consideration to the fact of incarceration without bail pending trial in assessing whether a trial delay is unreasonable, concluding that, of itself, such incarceration is not controlling in determining whether the right to a speedy trial has been denied. *State v. Long,* 1 Md. App. 326. We have also been mindful of the fact that the constitutional guaranty of a speedy trial is one which seeks to prevent lengthy pre-trial imprisonment where an accused is unable to make

bond. See *Hanrahan v. United States,* 348 F. 2d 363 (D.C. Cir.), and cases cited at page 367.

It is against this background, and with these principles in mind, that we consider the circumstances of the delay involved in the present case.

The evidence shows that the State was prepared to try appellant soon after the indictments were filed against him; Dudley emphatically so testified. This is not a case then where the delay was attributable to the State's need for an extended period of time within which to prepare its case for trial. The only problem which the State faced was to schedule a firm date upon which the case against appellant could proceed to trial. The evidence further shows that nothing in appellant's conduct from the time of his arrest and incarceration on November 7 or 8, 1967 through April 22, 1969, the date upon which his final motion to dismiss the indictments was heard and decided, in any way indicated an intention on his part to waive his right to a speedy trial. On the contrary, appellant expressly demanded a speedy trial on September 20, 1968; he did so again, according to his own testimony, unrefuted by and seemingly accepted as true by the State, on February 17, 1969; and he filed his final motion on April 9, 1969. Of the nine so-called "postponements" in the case, none had been requested by the appellant. In view of these facts, we think it plain that no part of the delay in bringing the case to trial was directly attributable to the appellant; it was all chargeable to the State. Of course, in considering the length of the delay, we do so in light of the fact that appellant was jointly indicted with three other persons and a fourth person was separately indicted as an accessory before the fact. And we think it not *per se* unreasonable that only one prosecutor was specially assigned to the trial of all these cases.

When, on September 20, 1968, some ten months after he had been first incarcerated in the city jail, appellant made his first motion for a speedy trial, the State had already tried one of his codefendants, *viz.*, Powers, on

June 11, 1968. The record does not disclose whether Powers or the other codefendants made motions for a speedy trial. McCoy, however, was the next tried, the trial beginning on November 14, 1968 and lasting three days. As of that time, appellant had been incarcerated in jail for over a year; the entire fifteenth year of his life had been spent in confinement awaiting trial. Insofar as the record shows, the case had, prior to September 20, 1968, been scheduled for trial on only two occasions—April 9 and May 22, 1968—and postponed each time without the fault of appellant. In his testimony, Dudley attributed much of the delay to the fact that a large number of armed robbery and gambling cases had been previously scheduled for trial in the same court as that in which appellant's case was scheduled. But it cannot be determined from his testimony when these cases were scheduled for trial or when they were actually tried and concluded. The State offered no evidence with respect to the status of the defendants in any of these cases, *viz.*, when they were charged, whether they had filed motions for speedy trials, whether they were incarcerated or on bail. It seems perfectly clear from the tenor of Dudley's testimony that these non-capital cases had a trial priority far higher than that afforded to appellant's capital case.

The State did not undertake to refute or contradict appellant's testimony that on December 9, 1968, when Judge Liss granted the State's request for a further postponement of appellant's trial, he ordered the State to bring his case to trial within one or two weeks. The record shows that Matthews, and not appellant, was the next tried, his trial beginning December 17, 1968. Appellant's second motion for a speedy trial, filed February 17, 1969, apparently resulted in the trial date of March 14, 1969 being set. But in the interim, the State tried McClain as an accessory before the fact. And when appellant's case came on for trial on March 14, it was again postponed due to Dudley's illness, the duration of which is not disclosed by the evidence. When, on April 9, 1969 appellant again sought dismissal of the indictments, he

had been incarcerated in the city jail for approximately seventeen months, and was then sixteen years of age.[2]

We hold under the particular facts and circumstances of this case that the seventeen-month delay in bringing appellant to trial — all chargeable to the State — was "substantial" in the constitutional sense. In so concluding, we have considered the length of the delay in light of the reasons assigned for it by the State — reasons which we deem too general and too vague to provide a firm evidentiary foundation justifying a determination that such delay was, under the circumstances, less than substantial. While the reasons for the trial postponements of December 9, 1968 and March 14, 1969 may have been individually justified, as found by the lower court, this hardly compensates for the State's failure to otherwise set and adhere to a firm trial date. The testimony of Dudley explaining the "system" of scheduling criminal cases for trial in relation to the trial of appellant's case reveals, on its face, an almost cavalier disregard for appellant's thrice demanded constitutional right to a speedy trial — a disregard which we think reached greatly heightened proportions when, despite Judge Liss's directive of December 9, 1968, to try appellant within a week or two, appellant's case was not again set for trial until March 14, 1969, after Matthews and McClain had in the interim been tried, and in apparent response to another motion for a speedy trial.

The Court of Appeals, in its holding that the accused in *Jones v. State, supra,* had been denied a speedy trial, placed great emphasis on a number of factors which it deemed significant, namely, that the accused had repeatedly asked for a speedy trial, that the State was always prepared for trial, there being no question of a lack of time for preparation on the State's part, and that the accused had been incarcerated without bail for approxi-

---

2. As heretofore indicated, the motion of April 9, 1969 was not couched in the customary language demanding a speedy trial. But the court and both parties treated it, in effect, as another motion for a speedy trial.

mately nine months. The court there indicated that the circumstances of that case were such that it required "special attention." The court recognized that while the State's Attorney of Baltimore City usually prepared criminal dockets, and assigned dates for trial of cases, the trial judge could nevertheless always take control and order a case assigned for trial; and that the prosecutor and trial judge should have arranged for a firm trial date. The court pointed out (page 611) that the State's effort to justify the delay on the ground that the court docket was overcrowded was not valid under the circumstances, no attempt having been made by the State "to show the status of any of the other defendants whose cases had been set on the 'overcrowded trial dockets,' or that any of such defendants had been pleading for an early trial date." The court concluded (page 612) that "the delays were not caused by sound, necessary or legitimate reasons, but were occasioned more to meet the convenience of individuals."

While the posture of *Jones* differs significantly from that of the present case, they share common features. The case of a youth of fourteen, arrested and jailed without bail for a capital offense, may not constitute a unique phenomenon in a major metropolitan center like Baltimore, but it nevertheless should command some "special attention," particularly where, after spending ten months in jail awaiting trial, he demands his constitutional right to a speedy trial. Except for the trial dates of December 9, 1968 and March 14, 1969, appellant's case appears to have been scheduled for trial without any real concern for whether it reached trial or not. We recognize that the State's Attorney for Baltimore City labors under a heavy burden of criminal cases and that he cannot do the impossible. We recognize that the courts are similarly engulfed by a seemingly endless parade of serious criminal cases. And we recognize that the State is not under any constitutional obligation to provide other than that which is reasonable in the trial of criminal cases and in the administration of criminal justice. But

312

simply to generalize about its problems in the trial of criminal cases, as the State has done in this case, cannot be permitted to operate as a successful defense to appellant's assertion of his constitutional right to a speedy trial. As indicated, we think the delay in trial was substantial, not primarily because of the duration of the time elapsed, but in the light of the particular and unusual circumstances surrounding such delay which were existent in this case. Consequently, the obligation was upon the State to show that there was no more delay than is reasonably attributable to the ordinary process of justice and that the accused suffered no serious prejudice thereby.

We hold that the State did not meet its burden and that, on the facts and circumstances of this case, the appellant was denied his constitutional right to a speedy trial.

> *Order overruling appellant's motion to dismiss the indictments reversed; case remanded for the entry of an order dismissing the indictments; the mandate of this court to issue forthwith.*