## SULLIVAN WILSON, HARRY VALENTINE, AND ERWIN RANDOLPH NUTTER *v.* STATE OF MARYLAND

[No. 201, September Term, 1969.]

*Decided February 10, 1970.*

654

The cause was argued before MURPHY, C.J., and AN-DERSON, MORTON, ORTH, and THOMPSON, JJ.

*Milton B. Allen* for appellants Nutter and Wilson. *Leonard A. Briscoe,* on brief, for appellant Wilson. *Frank J. Federico, II,* and *John D. Hackett,* on brief, for appellant Valentine.

*Gilbert Rosenthal, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Charles*

*E. Moylan, Jr., State's Attorney for Baltimore City,* and *Michael E. Kaminkow, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

ORTH, J., delivered the opinion of the Court.

Sullivan Wilson (appellant) was charged by indictment No. 1874 with possession (1st count) and control (2nd count) on 2 March 1968 of heroin, a narcotic drug. By an addendum to the indictment he was warned that the State intended to prosecute him for those offenses as a second offender. Harry Valentine (appellant) was charged in each of indictments Nos. 1871 and 1872 with possession and control of a narcotic drug on 16 March and 2 March 1968, respectively. Wilson, Valentine, Erwin Randolph Nutter (appellant), Theodore Sylvester Cook, Edward Allen and Louis O. Taylor were jointly charged by indictment No. 1878 with conspiring together and with each other to violate the Narcotics Laws of the State of Maryland on 12 February 1968 and thence continually up to and including 18 March 1968. Wilson, Valentine and Nutter were jointly tried under the indictments at a court trial in the Criminal Court of Baltimore which began on 18 February 1969.[1] At the close of all the evidence the court granted motions for judgment of acquittal made by Valentine as to indictments Nos. 1871 and 1872. Wilson was found guilty under each count charged in indictment No. 1874 and, on a consecutive trial, upon the addendum. Wilson, Valentine and Nutter were each found guilty of conspiracy under indictment No. 1878.

## FACTS

It appeared from testimony adduced by the State and from a diagram admitted into evidence that the west side of Pennsylvania Avenue (the even numbered side) in

---

1. According to the docket entries Cook was tried on 17 February 1969 without a jury and a not guilty verdict was directed. On the same date the docket entries show that the indictment was dismissed as to Taylor. The transcript of the proceedings in the instant case reflects that Allen was not tried with Wilson, Valentine and Nutter because his attorney was ill.

Baltimore City begins at its intersection with Mosher Street and, running in a northerly direction, ends at its intersection with Pitcher Street. Between Mosher and Pitcher Street it is intersected by Smithson Street and at the northwest corner of Smithson Street and Pennsylvania Avenue is the Alhambra Bar. Continuing in a northerly direction there follows the Ebony Barber Shop, a store, a Shoeshine Parlor, a driveway leading to a parking lot in the rear of 1530 Pennsylvania Avenue, the Spot Bar (1530 Pennsylvania Avenue), another driveway leading to the parking lot in the rear thereof and apparently more business establishments until the intersection with Pitcher Street. The east side of the 1500 block of Pennsylvania Avenue (the odd numbered side) begins at the intersection of Mosher Street and runs north to Mc-Mechen Street which intersects the east side of Pennsylvania Avenue but does not extend to intersect the west side. The intersection of McMechen Street with the east side of Pennsylvania Avenue is south of the intersection of Pitcher Street with the west side of Pennsylvania Avenue. Smithson Street leads to an alley running along the rear of the properties facing on the west side of Pennsylvania Avenue.

The police were investigating narcotics traffic in the Pennsylvania Avenue area. From 14 February 1968 to 16 March 1968 they conducted a surveillance of the 1500 block, most of their activities centering from Smithson Street to Pitcher Street. This area was under observation each week day and occasionally on Sundays. "Some days we may have spent ten to twelve hours. On other days, particularly on Sundays, we may spend two or three hours." It appeared that usually surveillance would begin about noon or shortly before and continue until about 4:00 P.M. The method of surveillance was primarily by personal observations of police officers, supplemented by photography — still photographs and movies. The still photographs were taken by an officer concealed in a building on the east side of Pennsylvania Avenue using a camera with a telephoto lens. The movies were taken

by officers concealed in a "surveillance vehicle" parked at the rear of the lot behind the shoe shop. Activities and occurrences observed on seven days during the period of surveillance were shown in detail by evidence adduced.

*February 14, 1968*

About 1:35 P.M. Valentine was observed standing in the north driveway leading to the parking lot in the rear of the Spot Bar. A woman approached him and he nodded his head. They were joined by Taylor and Allen. The woman gave Taylor something, received what appeared to be capsules from Taylor and departed. Ten still photographs showed substantially these occurrences and activities as described by an officer. They were also depicted in motion pictures taken.[2]

*February 16, 1968*

Valentine, Wilson, Taylor, Nutter and Allen were observed. When a woman approached, Valentine nodded his head and Wilson gave her "something" in exchange for "something else." Nutter met Valentine in the rear of the shoeshine parlor and something was exchanged between them—"we cannot say exactly what it was." Nutter then went in the direction of the barbershop, Valentine remaining in the parking lot area. Valentine, Allen, Taylor and Wilson made several other "transactions" in the area of the parking lot. "In one situation Allen and Taylor were observed to make an exchange with a female and on another occasion [they] were observed to pull something out of Allen's trousers. It would appear he had on two pair of trousers at the time and a manila envelope * * * And he gave Taylor some of the contents of the envelope, at which time he put the remainder back in his trousers." On other occasions Valentine climbed up on something, and reaching into a rainspout in the rear of the shoeshine parlor took a package down, and went out of sight for a few minutes, came back, and put something into the rainspout. These occurrences and ac-

---

2. The motion pictures were received in evidence and viewed by the trial court.

tivities of 16 February were apparently shown in the movies taken.

*February 21, 1968*

Valentine and Taylor were on the parking lot near the Spot Bar. At various times between noon and 4:00 P.M. a person approached them, talk for a few minutes, "and they would exchange something," whereupon the unknown person would depart.

*February 24, 1968*

On several occasions during the period of surveillance a person would approach one or more of Taylor, Valentine and Wilson, make an exchange of something and depart, Taylor, Valentine or Wilson remaining.

*March 2, 1968*

A "source" was used by the police. The agent was searched and found to have no narcotics or money in his possession. The police gave him a $5 bill. The agent walked south on Pennsylvania Avenue to Wilson and Valentine, who were in front of the Spot Bar. Valentine nodded to Wilson. A police officer was in a car parked on Pennsylvania Avenue about 75 feet from the scene. After a short conversation between the agent and Wilson, the officer saw the agent give the money to Wilson and receive something from Wilson which Wilson took out of his pocket. The agent returned directly to the officer and gave the officer three gelatine capsules containing a powder. At the time the market price for the capsules was "three for five" dollars. It was established by analysis that the powder in the capsules was heroin hydrochloride. The agent had been used by the police in this manner in other cases "numerous times." He was considered by the police to be "quite reliable," based on their experience with him in other cases.

*March 6, 1968*

The police observed Valentine "come to the rear of the parking lot and two persons stopped and talked to Edward Allen. Harry Valentine walked in—walked south

into the Alhambra Bar. Edward Allen went in the bar and returned in a few minutes and went back to the two persons that had talked to Valentine and an exchange of something was made and the persons departed. * * * Allen remained in front of the parking lot where he was later joined by Valentine."

*March 16, 1968*

The police "observed several people come up and talk to Allen and Allen went over to his car and reached down near the front wheel, the right front wheel of the car, where he took out a brown envelope. He came back to those people. He returned to the car and reached down again towards the front wheel of the car and returned back to the front of the driveway—the parking lot." Valentine and Cook were seated in the car during these occurrences. The police arrested Valentine, Cook, Allen and Taylor, who were also on the parking lot. Cook stated that he was the owner of the car and gave the police permission to search it. The police searched the car and "removed from the [right] front wheel of the car a brown envelope." It contained 7 clear gelatine capsules and 2 red gelatine capsules. It was shown upon analysis that the 7 clear capsules contained cocaine hydrochloride and the 2 red capsules contained heroin hydrochloride.

Nutter was arrested on 16 March and Wilson on 17 March.[3]

## WILSON AND NUTTER

*Severance*

The Maryland Rules of Procedure as to a joint trial relate to both offenses and defendants. The general rule is that the court may order two or more indictments to be tried together if the offenses and the defendants could have been joined in a single indictment. Rule 734. Two or more offenses may be charged in the same indictment in a separate count for each offense. Rule 716 a. Two or

---

**3.** Apparently all the arrests were made under the authority of arrest warrants. In any event none of the appellants on appeal contests the validity of his arrest.

more defendants may be charged in the same indictment "if they are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses. Such defendants may be charged in one or more counts together or separately and it shall not be necessary to charge all the defendants in each count." Rule 716 b. But even if two or more offenses and two or more defendants could be charged in a single indictment, the court "if it appears that an accused or the State will be prejudiced by a joinder of offenses or defendants in an indictment, or by joinder of trial together, * * * may order an election or separate trial of counts, grant separate trials of defendants or provide such other relief as justice requires." Rule 735.

Valentine, Wilson and Nutter were tried together under the following indictments:

No. 1871 charging Valentine with possession and control of a narcotic drug on 16 March 1968;

No. 1872 charging Valentine with possession and control of a narcotic drug on 2 March 1968;

No. 1874 charging Wilson with possession and control of a narcotic drug on 2 March 1968;

No. 1878 charging Valentine, Wilson, Nutter (and Cook, Allen and Taylor—see note 1 *supra*) ing the period 12 February to 18 March 1968.

Nutter and Wilson, before any evidence was received, moved for a severance.[4] Rule 735. Nutter did not object to being tried together with the other defendants charged in No. 1878 but moved for a severance of that indictment from the other indictments in which he was not charged. Wilson moved that Nos. 1878 and 1874 not be tried to-

---

4. Valentine expressly did not make a motion for a severance as to any of the indictments, "but would agree to be tried on all of them concurrently or together," upon assurance that there were no confessions of other defendants to be proffered at the trial. Such assurance was given and no confessions were in fact introduced.

gether and that neither of the indictments in which he was charged be tried with Nos. 1871 and 1872. The court denied the motions. Nutter and Wilson claim error.

In determining the question we are guided by the interpretation of the Court of Appeals with regard to Rules 716, 734 and 735. In *Lewis v. State*, 235 Md. 588, Lewis and a codefendant, Claude Street, were charged in seven indictments, Nos. 1853-1859, with robbery—three charging simple robbery and four armed robbery. Rosetta Green was also charged as a codefendant in No. 1854 and one Smith in No. 1857. Street, alone, was charged with armed robbery in indictments Nos. 1860 and 1861 and with larceny in indictment No. 1862. Each of the indictments charged separate offenses at different times and places. All the cases were tried at the same time by the court sitting without a jury. The Court held that under the Rules the trial court did not have the right to require Lewis, over objection, to be tried at the same time *all* of the other offenses were tried. It said that if the trial court found that neither the State nor Lewis should be prejudiced by a joinder for trial, it could have properly ordered a joinder for trial of indictments Nos. 1853, 1856, 1858 and 1859 as in those indictments only Lewis and Street were charged and those defendants "could have been charged with all of the offenses in one indictment by using separate counts." [5] But the trial court erred in requiring a joinder for trial of those indictments with No. 1854 because "all of the defendants named therein were 'not alleged to have participated in the same act or transaction or in the same series of acts or transactions' which constituted the offenses in indictments 1853, 1855, 1856, 1857 and 1858 through 1862; hence all of the defendants could not properly have been indicted in one indictment, even though separate counts were used. And this, likewise, applies to indictment 1857.

---

5. It would seem that No. 1855 should also be included in this statement, although the Court noted that the record extract did not indicate the disposition of No. 1855; "presumably [Lewis] was acquitted as to the charge contained therein." 235 Md. at 589.

Indictments 1860, 1861 and 1862 charged Street, alone, with offenses unrelated to the offenses charged in the other indictments. Again, it would not have been proper to have charged Street with the offenses named in these indictments and the other defendants with the crimes named in the other indictments in one indictment." 235 Md. at 590-591.

In *McChan, Jones, Bethea, Griffin and Shelly v. State,* 238 Md. 149, eleven indictments were returned as a result of a series of armed robberies. They presented charges against various defendants as follows:

> 1) Howard's Liquor Store on 27 December 1963:
>    No. 234—armed robbery by McChan, Jones and Griffin.
>    No. 236—deadly weapon by McChan.
> 2) Eddie's Cafe on 1 January 1964:
>    No. 233—armed robbery by McChan, Jones and Griffin.
>    No. 237—deadly weapon by McChan.
> 3) Lou's Liquor Store on 2 January 1964:
>    No. 230—armed robbery by McChan, Jones, Bethea, Griffin and Shelly.
>    No. 235—deadly weapon by McChan.
> 4) Ensor Lounge on 2 January 1964:
>    No. 228—armed robbery by McChan, Jones, Griffin, Bethea and Shelly.
>    No. 238—deadly weapon by McChan.
> 5) Howard's Liquor Store on 9 January 1964:
>    No. 229—attempted armed robbery by Jones, Griffin and Bethea.
>    No. 231—assault with intent to murder by Bethea.
>    No. 232—deadly weapon by Bethea.

McChan moved for a severance and the motion was denied and all the cases and all five defendants were tried together by the court sitting without a jury. The Court of Appeals held that it was apparent that the motion for severance should have been granted. "This is so because

[McChan] was put on trial with his codefendants in four cases in which he was charged jointly with at least two of the other defendants, and in three cases in which he was not charged at all, in violation of Md. Rule 734," citing *Lewis v. State, supra.* It reversed the judgments of conviction against McChan and remanded the cases for new trials.[6]

In the instant case Nutter was put on trial with his codefendants in one case in which he was charged jointly with all his codefendants and in three cases in which he was not charged at all. Wilson was put on trial with his codefendants in one case in which he was jointly charged with all his codefendants and in two cases in which he was not charged at all. Under the rulings in *Lewis* and *McChan* this was improper, objection having been made. The question is whether the charging of all the defendants with conspiracy operated to take the cases out of the *Lewis* and *McChan* holdings. We do not believe so. It is firmly established that to aid in proof of the crime charged the State generally may prove prior acts, even though they constitute a crime, which tend to show motive, intent, a common scheme or design, absence of mistake or accident, or identity, if such a showing has relevance in establishing the principal fact at issue or matter in dispute. *Ward v. State,* 219 Md. 559; *Jennings v. State,* 8 Md. App. 312 (1969). This general rule is applicable in cases of conspiracy. *Bloomer v. State,* 48 Md. 521. Thus the acts of Wilson and Valentine, charged as substantive crimes in separate indictments against them, were admissible in the conspiracy case on the theory of a general plan. They were also admissible with regard to the conspiracy as acts occurring during a continuing conspiracy, being committed during the period of the conspiracy as alleged. *Greenwald v. State,* 221 Md. 235, 250. But we cannot agree that because the substantive offenses charged against Wilson and Valentine may have been admissible in the conspiracy case, this operated to permit

---

6. The judgments against the other defendants were affirmed.

a joinder of trial of the substantive cases with the conspiracy case. To so hold would allow the State to avoid the intent of Rule 734 and obtain a joint trial of offenses and defendants, even though not chargeable in a single indictment, by charging that a number of persons conspired to commit substantive crimes charged against some of the alleged conspirators. If the State chooses to prosecute an individual conspirator for a substantive crime, he is entitled to a separate trial on that substantive crime on demand, even though the substantive crime constitutes an overt act tending to establish the conspiracy. We think it was error to deny the motions for severance made by Wilson and Nutter. We must therefore reverse the judgments against them and remand the cases for a new trial.

We note that the trial judge, if he found that neither the State nor the accused should be prejudiced by a joinder for trial as provided by Rule 735, could have properly ordered a joinder for trial of indictments 1872 and 1874 charging Valentine and Wilson, respectively, with possession and control of a narcotic drug on 2 March 1968, for these defendants could have been charged in one indictment, they being alleged to have participated in the same act or transaction.

*The Nondisclosure of the Identity of the Agent of the Police*

In *Nutter v. State,* 8 Md. App. 635 (1970), we discussed fully the question of the disclosure of the identity of an informer. We found the rule to be:

> The State has the privilege to withhold from disclosure the identity of persons who furnish information to police officers concerning the commission of crimes: except on the issue of guilt or innocence, and upon demand by the defendant, the trial court may, in the exercise of its judicial discretion, compel such disclosure upon demonstration that it is necessary and relevant to a fair defense.

We said that the factors to be considered in ascertaining whether such disclosure is necessary and relevant to a fair defense include the nature of the crime charged; the importance of the informer's identity to a determination of innocence, as for example, whether or not the informer was an integral part of the illegal transaction and the possible significance of his testimony; and the possible defenses. Whether the privilege must yield depends on the facts and circumstances of the particular case.

On cross-examination of the officer describing the activities of the agent, the State objected to questions by Wilson relating to the identity of the agent and the court said, "I will sustain the objection as to the actual identity of the source, but I will allow [the officer] to describe him as a human being of a certain race and general size." It was elicited that the agent used by the police was "a colored male about twenty-seven. He was five foot eight." He was not a police officer. The police had used the same agent in a similar manner "numerous times" and considered him "quite reliable." Objection to inquiry whether the agent had been convicted of a crime was sustained. It is clear that the court refused to compel disclosure of the actual identity of the agent demanded by Wilson. The point is squarely before us on appeal as to Wilson as he specifically claims that this was error.[7] Although we have reversed the judgments against Wilson on the ground of the improper denial of a severance, we think it necessary and advisable to resolve the issue of the nondisclosure of the agent's identity for the guidance of the lower court.

7. It does not appear that either Nutter or Valentine specifically demanded disclosure of the agent's identity at trial. Nutter, in his brief, indirectly presents the question but pressed the point on oral argument. Valentine does not present the question in his brief and made no oral argument, submitting on brief. As we have reversed the judgments against Nutter on the ground of denial of severance, the question is not dispositive of his appeal. And it does not concern Valentine as he does not raise it. See Md. Rules 1046 f and 1085. We note that Valentine was found not guilty of the charge in indictment No. 1872 arising from the activities of the agent.

The convictions of Wilson under indictment 1874 charging possession and control of a narcotic drug on 2 March were predicated upon the "buy" from him by an agent of the police. And it also appears from the remarks of the trial court that it considered the evidence as to the "buy" from Wilson on 2 March in arriving at its verdicts of guilty of conspiracy.[8]

The agent here falls within the meaning of "informer" as used in the rule as to the privilege of nondisclosure. He was an integral part of the illegal transaction. Although he was in the sight of the police when the transaction was consummated, he was out of their hearing; the police were about 75 feet away. The police saw the agent give Wilson "something" and Wilson gave the source "something." The officer determined this "by the movement of the arms" of Wilson and the agent; he did not "actually see their hands meet." Being an integral part of the illegal transaction, the agent was an important witness and the possible significance of his testimony is obvious. The agent's possible testimony was highly relevant and might have been helpful to the defense. So far as Wilson knew, he and the agent were alone, except for Valentine, and unobserved during the crucial occurrence. Unless he waived his constitutional right not to take the stand in his own defense, the agent was the one material witness available to him. His opportunity to cross-examine the police officer was hardly a substitute for an opportunity to examine the man who had been nearest him and took part in the transaction. The agent had helped

8. The court said: "Briefly, I find that the subject matter of all the relationships between the parties, and that includes the co-conspirators here, who are not on trial for one reason or the other, I am entitled to take into consideration in the conspiracy the evidence pertaining to all those people to spell out the *corpus delicti* of the conspiracy. We have following that evidence that narcotics were in fact involved by actual proof and analysis on the 2nd of March when the buy was made by the source from Wilson in the presence—immediate presence and the apparent acquiesence or consent to make the sale by Valentine. * * * So that in the conspiracy case I am entitled to look at the whole picture and, for those reasons, I am prepared to find the verdict as to the remaining Defendants, Nutter, Valentine and Wilson." It found each guilty of conspiracy.

to set up the criminal occurrence and had played a prominent part in it. His testimony might have thrown doubt in the identity of the articles exchanged between him and Wilson. The desirability of calling the agent as a witness, or at least interviewing him in preparation for trial, was a matter for Wilson rather than the State to decide. We think in the facts and circumstances here the privilege of nondisclosure must yield and that the trial court abused its discretion in refusing to compel disclosure demanded by Wilson. See *Roviaro v. United States,* 353 U. S. 53, which we believe to be factually comparable.

*Speedy Trial*

We think it also advisable to determine the contention raised by Wilson that he was denied a speedy trial. This contention embraces the constitutional guarantee of a speedy trial as such and also the denial of due process of law by reason of an alleged delay in "giving him notice of the complaint against him."

The investigation by the police concluded on 16 March 1968. Wilson was arrested the next day. On 26 March he was presented. On 3 April he filed a motion for discovery and inspection in proper person which was answered by the State on 26 April. On 26 March indictments were returned and copies served on 8 May on which date he was arraigned. On 13 May an attorney was appointed to represent him and demand for particulars was filed. They were answered by the State on 17 September and on 20 September a request for a hearing on the answer was filed. On 23 May he moved, in proper person, for a separate trial. On 5 June he filed a motion to dismiss. Alleging that he had been held without bail since his arrest, he claimed that he had not been afforded a speedy trial. Thereafter he was released on his own recognizance. The indictments came to trial on 18 February 1969.

On 18 February 1969 prior to trial on the merits there was a hearing on the motion. Wilson's attorney said that no further formal demand had been made for trial but,

after Wilson had been released on his own recognizance, counsel had asked an Assistant State's Attorney "several times whether we would come to trial with this case * * * I was Court appointed in this case and I was interested in it for that point or that reason alone. I wanted to dispose of the case, if for no other reason." The Assistant State's Attorney claimed that "it was a long series of defendants and he wasn't ready for trial yet." Counsel expressly stated to the trial court that he had no evidence to offer in support of the motion. The court denied the motion, noting that there was no evidence of actual prejudice demonstrated.

We have considered the question of a denial of a speedy trial in over forty reported opinions in cases which have come before us on direct appeal. In the circumstances here we find that the delay was not "substantial." Thus there was no showing of prejudice *prima facie* so as to place the burden on the State to prove that there was no more delay than was reasonably attributable to the ordinary processes of justice and that the accused suffered no serious prejudice thereby. *Stevenson v. State,* 4 Md. App. 1, 14. The delay being less than "substantial," demand having been made, Wilson had to show, at least, "a strong possibility of prejudice." *Barnett v. State,* 8 Md. App. 35, 40. He did not do so and we hold that there was no violation of the constitutional guarantee to a speedy trial. Compare *Wilson v. State,* 8 Md. App. 299 (1969).

We find no unreasonable delay "in giving [Wilson] notice of the complaint against him." The indictment charging possession and control of a narcotic drug alleged that the crime was committed on 2 March 1968. The indictment for conspiracy charged a continuing conspiracy to 18 March 1968. Wilson was arrested on 17 March, presented on 26 March and indicted on 17 April. Motion for discovery was answered on 26 April. Such delay as there may have been did not constitute a denial of due process; it was occasioned by the existence of undercover work which would have been jeopardized had an earlier arrest

been made. See *Jones v. State*, 3 Md. App. 616; *Brown v. State*, 1 Md. App. 571.

And for the reasons given in finding that there was not a denial of a speedy trial, we feel that Wilson was not denied due process for such delay as existed in bringing the cases against him to trial.

As we have reversed the judgments against Nutter and Wilson, there is no need to reach the other questions presented by them.

## *VALENTINE*

Valentine contends: (1) the evidence was not sufficient to sustain his conviction of conspiring to violate the narcotic laws, and (2) the trial court erred in admitting certain evidence.

### (1)

We discussed fully the crime of conspiracy in *Jones v. State*, 8 Md. App. 370 (1969). In Maryland it is a common law misdemeanor; nothing is better settled in the criminal law than the doctrine that a conspiracy to commit any crime is a misdemeanor at common law. It is immaterial whether the intended crime be a felony or merely a misdemeanor, and whether it be criminal at common law or by statute only. Conspiracy is a combination by two or more persons to accomplish a criminal or unlawful act, or to do a lawful act by criminal or unlawful means. The gist of conspiracy is unlawful combination and no further overt act is required to constitute it. Combination results from agreement but it is not necessary that there be a formal agreement, manifested by formal words, written or spoken. It is enough if the parties tacitly come to an understanding in regard to the unlawful purpose and this may be inferred from sufficiently significant circumstances. As the Court of Appeals said in *Seidman v. State*, 230 Md. 305, 322:

> "A conspiracy may be shown by circumstantial evidence from which an inference of common design may be drawn and it is not necessary to demonstrate that the conspirators met

and agreed in terms to a design and to pursue it by common means."

Or as the Court said in *Lawrence v. State,* 103 Md. 17, 22:

"Concurrence of action on a material point is sufficient to enable a jury [or the court when the trier of fact] to presume concurrence of sentiment, and from this the actual fact of conspiracy may be inferred."

See also *Hill v. State,* 231 Md. 458; *Foster v. State,* 230 Md. 256; *Boddie and Brooks v. State,* 6 Md. App. 523; *Harper v. State,* 6 Md. App. 1; *Price v. State,* 4 Md. App. 701. As stated herein *supra* acts occurring during a continuing conspiracy may be shown to establish the conspiracy, as may acts, even though they constitute a crime, that tend to show motive, intent, a common scheme or design, absence of mistake or accident, or identity, if such a showing has relevance in establishing a principal fact at issue or matter in dispute. So while an overt act in furtherance of the agreement is not an essential element in common law conspiracy, it may be shown in proving conspiracy. But such act need not be actually participated in by all the conspirators. Even statutes adding a requirement of an "overt act" for conviction do not specify that each conspirator must do it, but as soon as any one of them has done an act in furtherance of the unlawful plan, all parties to such conspiracy become liable. *Perkins, Criminal Law* (1957), p. 533.[9]

---

9. Of course it is impossible for a person to form a combination with himself. A conspiracy requires at least two parties. But we are not here concerned with the procedural result which may occur by reason of the two-or-more requirement. "A procedural result of the two-or-more requirement is that if two are tried for a conspiracy in which no additional persons are implicated, a verdict finding one guilty and the other not guilty requires a judgment of acquittal of both, — if no special immunity is involved. Impossibility of conviction is not the same as innocence and if the guilt of two is established one may be convicted although the other may be protected by diplomatic immunity or some other procedural bar. The acquittal of one of three defendants on trial for conspiracy is of no avail to the two who were

As in this case the court was the trier of fact, the sufficiency of the evidence is determined under the clearly erroneous rule. Md. Rule 1086; *Williams v. State*, 5 Md. App. 450. We think that on the evidence hereinbefore summarized the court could be fairly convinced beyond a reasonable doubt that Valentine conspired with one or more of the persons charged to violate the narcotics laws which was the conspiracy charged. Compare *Adams v. State*, 202 Md. 455. We believe that the evidence was sufficient for the court properly to draw therefrom an inference of a common design; the evidence established a concurrence of action sufficient for the court to presume concurrence of sentiment and from this an inference of the actual fact of conspiracy. The credibility of the witnesses and the weight of the evidence were matters for the trier of fact. We cannot say that the judgment of the court was clearly erroneous on the evidence before it and thus we may not set it aside.

We do not agree that crimes relating to the narcotics laws are, as Valentine suggests, crimes which fall within the concert of action rule—agreement by two persons to commit a particular crime cannot be prosecuted as a conspiracy when the crime is of such a nature as to necessarily require the participation of two persons for its commission. See *Robinson v. State*, 229 Md. 503. Nor do we find that it was the intent of the legislature in enacting the law codified as Art. 27, § 38, Md. Code, prescribing that the punishment of a person convicted of conspiracy shall not exceed the maximum sentence for the offense he conspired to commit, that an acquittal of the particular crime necessarily bars conviction of conspiracy to commit it. We think the holdings in *Scarlett v. State*, 201 Md. 310, that the acquittal of a particular crime does not bar a subsequent prosecution for a conspiracy to commit the crime, and in *Rouse v. State*, 202 Md. 481, that

convicted, and the acquittal of all but one on trial will not bar the conviction of that one if the indictment charged that one or more others were involved and this is established by the evidence. The fact that one of two conspirators has not been arrested is no bar to the conviction of the other."

a prior conviction of a particular crime does not entitle the accused to the defense of *res judicata* in a subsequent prosecution for conspiracy, even though the same evidence was introduced as part of the proof of the conspiracy, still prevail. Nor do we feel that all of the testimony of Detective Elmer Moore was inadmissible under the holding in *Kucharczyk v. State*, 235 Md. 334. In ruling on motions to strike all of Moore's testimony, made on grounds as will be apparent in our discussion *infra* of point (2), the Court said:

> "I do not find that his entire testimony is inconsistent and that the one inconsistency referred to would justify completely striking out all of his other testimony . . . he did see transactions with—of the various Defendants several times on different days when they were not photographed and this indicates to me no inconsistency, but indicates that the State did not ask for this information in direct examination and it only came out by virtue of the cross examination on this point and certainly does not appear to have been either voluntarily withheld or voluntarily offered to embellish the case."

The trial court stated it found his testimony credible and we do not feel that the *Kucharczyk* holding compels us to find that the court was wrong in admitting his testimony and considering it.

### (2)

Valentine claims reversible error in the admission of ten photographs covertly taken by the police on 14 February 1968 depicting activities involving him and other codefendants. They were first admitted without objection during the direct examination of Detective Moore. On cross-examination of him it appeared that he was not personally with the photographer when the photographs were taken. The court granted a motion then made by Wilson, expressly applying it to all defendants, to strike

the testimony of Moore concerning the transaction shown by the photographs and to exclude the photographs, saying, "The motion is granted on that limited area." Thereafter the State produced Officer Moffett Brown who testified that he had taken the photographs. Objection was made on the ground that Brown's name was not listed in the State's answer to the motion for discovery. Counsel for Valentine said, "Our objection is only limited to the fact that it was not disclosed within the answers to the motion for discovery * * *." But from the record before us it appears that it was Wilson, in proper person, who requested discovery and it seems that Valentine did not avail himself of Rule 728. But even if he had the court did not commit reversible error as to Valentine in permitting Brown to testify. The court said that it would recess to allow Valentine's counsel to confer with the State and Brown "about any testimony he is going to give. * * * Now after hearing that or at this point, if you want to ask for a continuance of the case, I will grant the continuance." Valentine's counsel said, "Well under that expression, Your Honor, we feel we wanted to make the objection for the record so that it would be entered in the record. Now, with regards to proceeding on the substantive matter that they want to develop, we want to proceed. We don't claim surprise and we are not asking for a continuance." The court overruled Valentine's objection to Brown testifying "in light of his counsel's representations that they are not claiming prejudice by virtue of any surprise due to the fact that this witness's name was not included on the list." The court's proposal and ruling were proper in the circumstances. See *Clark and Richardson v. State,* 6 Md. App. 91; *Jones v. State,* 5 Md. App. 180.

Brown then testified in detail as to the taking of the photographs. He said he had personally taken them, gave the date and times they were taken and identified Valentine as one of the persons in the photographs. The photographs were reoffered and admitted in evidence. We find no error in the admission of the photographs. See

*McLaughlin v. State,* 3 Md. App. 515, which held at 523, that a photograph is admissible upon "* * * competent extrinsic evidence showing the photograph to be a true representation of the scene or object which it purports to represent at the time when the appearance of such scene or object is relevant to the inquiry in connection with which the photograph is offered."

> *As to Nutter:*
> *Judgment under indictment case 1878 reversed: case remanded for a new trial; costs to be paid by the Mayor and City Council of Baltimore.*
>
> *As to Wilson:*
> *Judgments under indictment No. 1874 reversed; conviction under addendum thereto reversed; judgment under indictment No. 1878 reversed; cases remanded for a new trial.*
>
> *As to Valentine:*
> *Judgment under indictment No. 1878 affirmed.*